## THE MAYOR *v.* LORD.

1. A mandamus directed to the mayor and aldermen of a city is rightly enough directed, if it appears that they together constitute the city council and have the government of it, even although the city may be incorporated by the name of "the city of ——," and by that name have power under the charter to sue and be sued.
2. A State law prescribing rules of practice has no efficacy in the courts of the United States, unless those courts adopt it.
3. When a creditor has a judgment at law for a debt against a city on the city bonds, the city cannot set up in defence to an application for mandamus that the bonds were not sanctioned by a requisite popular vote.
4. An injunction from a State court against a city's levying a tax to pay certain bonds of the city, cannot be set up to prevent a mandamus from the Federal courts ordering the city to levy a tax to pay a judgment obtained against it on those same bonds. *Riggs* v. *Johnson County* (6 Wallace, 106), affirmed.
5. A recital in an alternative mandamus to a city to levy and collect a tax, in a coming year, on the real cash valuation of its property for that year (stating the value), that property in the city is subject to taxation at such real cash valuation, but that its assessed valuation had never exceeded one-half of that valuation, and that the mayor and aldermen were authorized by the city charter to correct the valuation when erroneous, and that they had hitherto neglected to perform that duty, is not traversed by a denial that the valuation never exceeded half the cash value, and an averment that the city council always performed its duty in respect to correcting erroneous assessments.

ERROR to the Circuit Court for the District of Iowa; in which court the United States, on the relation or one R. L. Lord, were plaintiffs, and asked and obtained a peremptory mandamus against the mayor and aldermen of the city of Davenport, defendants.

*Messrs. Weed and Clark, for the plaintiff in error; Mr. Grant, contra.*

Mr. Justice SWAYNE stated the case, and delivered the opinion of the court.

This case is brought before us by a writ of error to the Circuit Court of the United States for the District of Iowa. It is one of a class of cases, many of which, under different

aspects and presenting a variety of questions, have been heretofore decided by this court. It appears by the record that, on the 6th of November, 1867, the relator procured to be issued against the plaintiffs in error an alternative writ of mandamus, which was substantially as follows:

It recites that the relator recovered a judgment in that court against the city of Davenport, on the 15th of May, 1867, for the sum of $63,509\frac{68}{100}$, and costs; that the city is a municipal corporation, and that its affairs are managed by a mayor and aldermen, who perform all the duties of the corporation in relation to levying and collecting taxes, and paying its debts; that execution has been issued upon the judgment and returned, no property found, and that there is no property belonging to the city liable to execution; that the causes of action upon which the judgment is founded are the principal of certain bonds issued by the city in payment of her subscription to the stock of the Mississippi and Missouri Railroad Company in the years 1853 and 1854, and the interest on these bonds, and the interest on certain bonds of the city issued in the year 1857, under a vote of the people to borrow money for various city improvements; that the mayor and aldermen were empowered by an act of the legislature, of the 22d of January, 1858, whenever necessary, to levy a specific tax to pay the railroad bond debt and interest; that no interest has been paid on this debt since 1861, and that the principal is now due and unpaid; that the mayor and aldermen, besides the specific tax to pay the railroad bonds before mentioned, are authorized by the city charter of January 22d, 1855, to levy a general tax of five mills on the dollar, and, by the general city incorporation act of 1851, one mill on the dollar as a sinking fund to meet its bonded debt; that the valuation of property for the year 1867 is five millions of dollars, which is not more than one-half the cash value of the property; that the property of the city is subject to taxation at its real cash value; that the assessment is made by the city assessor; that the mayor and aldermen are authorized to correct the assessment, when erroneous, and that they have heretofore neglected to per-

form this duty; that it has been the duty of the mayor and aldermen, since the year 1861, to levy a specific tax amounting to $7500 a year, to pay the interest on the railroad bonds —a tax of one mill on the dollar amounting to $4000 on the assessed value, and $8000 on the real value of the property of the city, as a sinking fund, to be applied to the principal of the bonds, and a tax of ten mills on the dollar for general purposes, which, after defraying the ordinary city expenses (five mills on the dollar being sufficient for that purpose), would amount to $20,000 per year, taking the assessment as the basis of taxation, and $60,000 per year, if the basis were the real value of the property, whereas the whole annual interest of the debt of the city, since 1863, has not exceeded $25,000; that the mayor and aldermen, since the interest became delinquent, have not levied a general tax exceeding five mills on the dollar; that the relator has made a demand on the mayor and aldermen to levy a tax sufficient to pay said judgment; that they have neglected to do so, and that the relator is without other adequate remedy at law.

The mayor and aldermen are, therefore, commanded to levy and collect on the assessment roll for the year 1867 a special tax to pay the interest on the railway bonds, and to levy and collect a special tax of one mill on the dollar on the assessment of 1867, to be applied upon the principal of the bonds on which the judgment was recovered.

It is averred that these two levies, less delinquencies, would amount to between ten and eleven thousand dollars, which, when applied in payment of the judgment, would leave a balance of nearly $50,000 unpaid.

To pay this balance the mayor and aldermen are commanded to cause the real and personal property of the city to be assessed for the year 1868 at its real cash value, and upon such valuation to levy over and above the five mills on the dollar for ordinary city purposes, a specific tax sufficient to pay the balance of the interest on the railway bond debt, amounting to $22,390$\frac{75}{100}$; and a specific tax of one mill on the dollar, to be applied in payment of the principal of the bonds embraced in the judgment; to levy and collect the

said tax on the valuation of 1867, and apply it on the judgment; to levy and collect the said tax on the real cash valuation of the property for the year 1868, and apply it in payment of the judgment; and if any balance should remain, of principal or interest, to continue to levy and collect the taxes yearly, and to apply them, when collected, in payment of the judgment, until the principal and interest, and costs of the judgment, are fully paid, or that the mayor and aldermen should appear before the court at the time specified and show cause why they refused to do so.

A motion was made to quash the writ, which was overruled. The same motion was subsequently made and again overruled. The mayor and aldermen thereupon made a return.

It sets out the following defences:

1. That the writ was issued in the name of the United States, instead of the President.

2. That it was erroneously directed to the mayor and aldermen.*

3. It denies that the affairs of the city are controlled by the mayor and aldermen, but avers that they are managed by the city council.

4. It denies that the mayor and council were authorized by the laws mentioned, or that it was their duty to levy and collect the taxes mentioned.

5. It denies that the issue of the bonds for improvements was authorized by a vote, as alleged.

It avers that on or about the 19th of June, 1861, the mayor and aldermen were, and ever since have been, enjoined by the decree of the District Court of Scott County from levying any tax to be applied in payment of the principal or interest of the railroad bonds in question.

---

* The more particular ground of this second objection, as stated in the argument of counsel, was that the city of Davenport was incorporated by the name and style of the city of Davenport, and by *that* name was to "have power to sue and be sued, to implead and be impleaded, &c., in all courts of law and equity, and in all actions whatsoever." And it was contended that the writ ought to have been addressed to the corporation by its legal name.—REP.

6. It denies that the assessed valuation ever amounted to $5,000,000,—that in the year 1867 it amounted to only $4,592,423.

7. It denies that the valuation never exceeded half the cash value, and avers that the city council has always performed its duty in respect to correcting erroneous assessments.

Some details are given as to the expenditures of the city, which it is not deemed necessary particularly to advert to. The relator asked leave to amend the writ as to the name in which it was issued. Leave was given and it was amended accordingly. To the averment that the writ was misdirected, he replied that it was directed properly, the mayor and aldermen composing the city council. To each of the several parts of the residue of the return he demurred specially. At the argument of the demurrer he abandoned his claim for the levying of a tax of one mill for a sinking fund, and the parts of the writ relating to the subject were stricken out. The court sustained the demurrer. The defendants elected to abide by it and made no further return. Thereupon the court awarded a peremptory mandamus, as prayed for.

The learned counsel for the plaintiffs in error have referred to a statute of Iowa as regulating the practice in this class of cases. It is proper to remark that the provisions of that statute not having been adopted by a rule of the Circuit Court for that district, could have no effect in this proceeding. A State law prescribing rules of practice has no efficacy *proprio vigore* in the courts of the United States. It can only be made effectual by adoption in the proper manner.

The point that the writ was misdirected is not well taken. The direction was substantially correct, and the court properly disregarded the objection.

To the proposition that the bonds issued by the city for improvement purposes were not sanctioned by the requisite popular vote there are two answers: (1.) The respondents are concluded by the judgment at law. They can not go behind it to raise any question touching the sufficiency of

either of the causes of action upon which it was rendered. (2.) It is not denied that the relator was an innocent purchaser. In that event, if the bonds could have been properly issued under any circumstances he had a right to presume they were so issued, and as against him the city is estopped to deny their validity.*

The injunction cannot avail the respondents. The relator was not a party to the proceeding. If he had been, it is not competent for a State tribunal thus to paralyze the process issued from a court of the United States to give effect to its judgment. This is a sound and salutary principle. It is vital to the beneficial existence of the National courts, and has heretofore been applied by this tribunal, upon the fullest consideration, in other cases presenting the same question.†

The denials of the averments in the writ touching the cash value of the property assessed are immaterial. In any event it was the right of the relator to have the respondents required to supervise the valuation, and to correct the errors, if any, which might be found to exist.

The allegations of the return as to the tax laws relied upon by the relator, and the powers and duties of the respondents under them, could have been more appropriately presented upon the motions to quash the writ, or by a demurrer. They were not insisted upon in the argument at the bar. We shall, therefore, content ourselves by remarking that we are satisfied with the conclusions upon the subject reached by the court below.‡

We think the demurrer to the return was properly sustained, and the order for a peremptory writ of mandamus properly made.

The judgment of the Circuit Court is

AFFIRMED.

---

* Aurora City v. West, 7 Wallace, 82; Beloit v. Morgan, Ib. 619; Meyer v. The City of Muscatine, 1 Id. 393; Mercer County v. Hecket, Ib. 93; Van Hostrup v. Madison City, Ib. 297; Supervisors v. Schenck, 5 Id. 784.

† Riggs v. Johnson County, 6 Wallace, 166; United States v. The Council of Keok uk, Ib. 516.

‡ Butz v. City of Muscatine, 8 Id. 575.