STATE EX REL. C. JOHN SATTI v. ELLA T. GRASSO, SECRETARY OF STATE, ET AL.

SUPERIOR COURT      NEW LONDON COUNTY      FILE NO. 33198

Memorandum filed November 28, 1966

*Alexander A. Goldfarb,* of Hartford, and *Washton, Vogt & Traystman,* of New London, for the plaintiffs.

*Harold M. Mulvey,* attorney general, and *Raymond J. Cannon,* assistant attorney general, for the named defendant.

*Edmund J. Eshenfelder,* of New London, for the defendants Bernard A. Batycki et al.

KLAU, J. The plaintiff sought a temporary order of mandamus requiring the defendants to make available the optional use of a straight ticket device on the voting machines to be used in the city election of the city of New London on September 12, 1966. Since the hearing on an order to show cause why the motion should not be granted was held on Friday, September 9, 1966, no opportunity was afforded for a written memorandum. The purpose of this memorandum is to set forth the basis for the order of the court orally granting the motion.

The plaintiff claims that article sixth, § 5, of the constitution of Connecticut requires that the straight ticket device be made available as an optional method of voting. The defendants claim that the charter of the city of New London prohibits the use of a party lever on a voting machine. Article sixth, § 5, of the constitution of Connecticut provides that "[a]t every election *where candidates are listed by party designation* and where voting machines or other mechanical devices are used, each elector shall be able at his option to vote for candidates for office under a single party designation by operating a straight ticket device." (Italics supplied.)

Where candidates are listed by party designation, the constitution requires that each elector be afforded the opportunity of using at his option a party lever in voting. The debate of the delegates to the constitutional convention on October 15, 1965, at which time the resolution was adopted and later was incorporated in article sixth, § 5, of the constitution, indicates a clear intention to incorporate into the constitution a guarantee to each elector the right to use at his option a party lever on a voting machine in any election, where candidates are listed by party designation. See Conn. Const. Convention

Proceedings, October 15, 1965, pp. 766–806 (File No. 16).

The present charter of the city of New London, §§ 14 and 14a, provides for nomination of candidates for city offices by political party[1] and further provides for the listing of such candidates by some appropriate designation indicating the political party by which they are nominated. 21 Spec. Laws 1152, No. 483, as amended, 28 Spec. Laws 224, No. 186. The difficulty arises in the language of § 14 of the charter, which provides as follows: "Ballots or ballot labels used in city elections held under said act and any amendments thereto shall be without party mark or designation, except that all candidates nominated by a political party as provided herein shall have some appropriate designation indicating the political party by which they have been nominated." 28 Spec. Laws 224, No. 186 § 1. This section has been interpreted by the director of

[1] ". . . In addition to the method provided in number 330 of the special acts of 1921, and in any amendments thereto, for nominating candidates for any office to be filled at a city election, the two political parties which polled the highest number of votes for governor at the last preceding state election for such office may each nominate for each of the offices to be filled any elector eligible to elective office in said city as provided in said act. Such nominations shall be by party caucuses and convention called and held in a manner similar to that provided for the nomination of candidates for representatives in the general assembly. Nominations so made shall be certified to the city clerk at least thirty days prior to the next succeeding second Monday in September. Any person so nominated shall have his name placed upon the ballots or labels for the city election subject to the same conditions as provided by said act for persons nominated by petition, except that the persons nominated by the political party which polled the highest number of votes for governor at the last preceding state election shall have their names appear first on such ballots or ballot labels in alphabetical order and the persons nominated by the political party which polled the next highest number of votes for governor at the last preceding state election shall have their names appear second on such ballots or ballot labels in alphabetical order." (New London Charter § 14a; 28 Spec. Laws 225 § 2.)

law of the city as prohibiting the use of party levers in a city election. But emphasis is given only to the first part of the above-quoted provision. The latter portion is to be read in connection with nominations by political parties.

In 1921, the charter of the city of New London was revised to provide for a council-manager form of government. 18 Spec. Laws 710. Nominations for city council were made entirely on a nonpartisan basis. Nominations could not be made by a political party, and voting at city elections for city officials was done by ballot without party mark or designation. Section 14 of the charter provided: "Ballots used in city elections held under this act shall be without party mark or designation." In 1933, the charter was amended to provide for nominations by political parties, and party designation of candidates so nominated was required. 21 Spec. Laws 1152, No. 483 § 2. Section 14 of the 1921 charter was amended by adding to the existing provision the following language: ". . . except that all candidates nominated by a political party as provided herein shall have some appropriate designation indicating the political party by which they have been nominated."

The apparent contradiction in § 14 as amended was resolved by an opinion of the city director of law which provided for designation of each candidate on the voting machine by the party which nominated him but prohibited the use of a party lever in connection with the voting. Although each party had a distinct line on the voting machine in accordance with the charter provisions and each candidate on that line was designated by the particular party which nominated him, no party lever was used. This situation continued until Special Act 372 was adopted in 1953, when the 1933 provi-

sions relating to nominations by political parties and party designation on the voting machine were repealed and the situation returned to the nonpartisan status in existence prior to 1933. 26 Spec. Laws 981. The nonpartisan elections thereafter continued until 1957, when the 1953 act was repealed, thus restoring the situation to the 1933 status providing for party nomination and party designation on the voting machine. 28 Spec. Laws 224, No. 186.

From a reading of both the 1933 and 1957 Special Acts, as well as the legislative hearing in 1957 (Hearings before the Joint Standing Committee on Cities and Boroughs, 1957 Sess., pt. 2, pp. 885–90) on House Bill 1914, "An Act Amending the New London City Charter concerning Municipal Elections," it is clear that candidates nominated for city office under the charter of the city of New London are listed on the voting machine by party designation. Under such circumstances, the case falls directly within the provisions of the constitution, article sixth, § 5, by virtue of the constitutional mandate.

The defendants have advised the court that there is no mechanical difficulty in complying with the order requested and that proper instructions can be prepared for the voters in the city election to be held September 12, 1966, in connection with the use of the optional party lever. Under these circumstances, it appears that the relief sought by the plaintiff should be granted, since the performance of a precise and definite act alone is sought, in respect to which the plaintiff has a clear right, and he has no other adequate remedy. See *State ex rel. Lacerenza* v. *Osborn,* 133 Conn. 530, 534.

The attorney general, representing the defendant secretary of state, Mrs. Grasso, agreed at the

hearing that the constitutional provision requiring the optional use of a straight ticket device on the voting machines in the present case was applicable.

The motion of the plaintiff for a temporary order of mandamus is granted.